UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARIA DE LA LUZ LIERA RUIZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. 4:15-CV-05075-JTR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 14, 21. Attorney David L. Lybbert represents Maria De La Luz Liera Ruiz (Plaintiff); Special Assistant United States Attorney Tina R. Saladino represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 6. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff filed an application for Supplemental Security Income (SSI) on March 6, 2012, alleging disability since August 8, 2008, due to depression, anxiety, arthritis, post-traumatic stress disorder (PTSD), diabetes, and back pain. Tr. 198-206, 231. The application was denied initially and upon reconsideration.

ORDER GRANTING DEFENDANT'S MOTION . . . - 1

Tr. 114-117, 121-128. Plaintiff requested a hearing on December 14, 2012. Tr. 129-131. Plaintiff then filed an application for Disability Insurance Benefits (DIB) on July 15, 2013, also alleging disability since August 8, 2008. Tr. 217-223. Administrative Law Judge (ALJ) James W. Sherry held a hearing on November 21, 2013, at which Plaintiff, represented by counsel, and vocational expert, Daniel R. McKinney, testified. Tr. 48-89. At the hearing, Plaintiff amended her alleged date of onset to January 1, 2012. Tr. 55-57. The ALJ issued an unfavorable decision on December 13, 2013, denying both the SSI and DIB applications. Tr. 25-41. The Appeals Council denied review on June 1, 2015. Tr. 1-9. The ALJ's December 13, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 28, 2015. ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 38 years old at the amended date of onset. Tr. 198. The last grade Plaintiff completed was the sixth grade in Mexico in 1985. Tr. 232. Plaintiff's past work included corn processor/sorter, housekeeper, meat cutter, farm laborer, and warehouse sorter. *Id.* Plaintiff reported she stopped working on August 8, 2008, because she "had to [quit] because of my condition and also because my son he also has a disability." Tr. 231.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is

not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that physical or mental impairments prevent her from engaging in her previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do her past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is

made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On December 13, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2012, the amended date of onset.  Tr. 27.

At step two, the ALJ determined Plaintiff had the following severe impairments:  diabetes, asthma, varicose veins, multiple pains/arthralgia/body aches secondary to depression, gastrophageal reflux disorder (GERD), mood disorder, major depressive disorder, and anxiety disorder.  Tr. 27-28.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 28-29.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined she could perform a range of light work with the following limitations:

> The claimant could lift no more than 20 pounds at a time and can frequently lift or carry 10 pounds.  The claimant can stand or walk for six hours in an eight-hour workday.  The claimant can sit for six hours in an eight-hour workday.  She cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps or stairs.  She can occasionally balance, stoop, crouch, kneel, and crawl.  She should avoid concentrated exposure to poorly ventilated areas and irritants such as fumes, odors, dust, chemicals, and gases.  She can perform simple, routine and repetitive tasks, specifically 1 to 3 step tasks for two-hour segments with normal breaks.  She can have occasional and simple changes in the work setting.  She needs more time to learn new procedures and processes.  She learns best by demonstration and oral instruction. She can have occasional, superficial interaction the general public.  She can have superficial interaction with coworkers and supervisors.

Tr. 29. The ALJ identified Plaintiff's past relevant work as agriculture produce sorter and found that Plaintiff was able to perform her past relevant work as generally performed. Tr. 39-40.

In the alternative to a step four determination denying benefits, the ALJ made a step five determination that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of small products assembly II, garment sorter, and inspection packer. Tr. 40-41. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the amended date of onset, January 1, 2012, through the date of the ALJ's decision, December 13, 2013. Tr. 41.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to accord proper weight to the medical sources statements in the record; (2) failing to fully and fairly develop the record; (3) failing to make an adequate step four determination; and (4) failing to make an adequate step five determination.

## DISCUSSION

**A.    Medical Source Statements**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by Thomas Genthe, Ph.D., Charles Wolfe, M.D., and Javier Huerta, PA. ECF No. 14 at 9-14.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant.

Case 4:15-cv-05075-JTR    Document 23    Filed 06/02/16

*Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830. When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician. *Id.* at 830-831.

The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

1.   **Thomas Genthe, Ph.D.**

Dr. Genthe evaluated Plaintiff on December 30, 2009. Tr. 382-387. He diagnosed Plaintiff with a mood disorder due to a complete hysterectomy, stating that Plaintiff "reported a mixed anxiety-depressive disorder, which may be pathophysiologically associated with her hysterectomy, although some secondary

ORDER GRANTING DEFENDANT'S MOTION . . . - 6


grief issues certainly play at least some role in her mood disturbance." Tr. 385-386.  Dr. Genthe noted that Plaintiff's medical regimen appeared to be managing her symptoms at least moderately well.  Tr. 386.  Dr. Genthe opined that Plaintiff had a fair ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work with or near others without being distracted by them, and respond appropriately to criticism from supervisors.  *Id*.  The remainder of the abilities, Dr. Genthe listed as good.  The ALJ gave this opinion significant weight.  Tr. 37.

Later, in July of 2012, Dr. Genthe reviewed and adopted an opinion by J. Brooke Sjostrom, MS, LMHC.  Tr. 466-474.  Ms. Sjostrom diagnosed Plaintiff with depressive disorder, anxiety disorder, and psychotic disorder.  Tr. 473.  Ms. Sjostrom stated that Plaintiff appeared to exhibit intellectual deficits that also complicate her clinical picture.  Tr. 473.  Ms. Sjostrom further stated that Plaintiff "is unlikely to function adequately in a work setting until her psychological symptoms have been managed more effectively."  Tr. 474.  The ALJ gave Dr. Genthe's adoption of this opinion "little weight' because (1) it was inconsistent with Plaintiff's daily activities, (2) it was inconsistent with the clinical observations, (3) it was not supported by Dr. Genthe's earlier opinion or the opinion of other providers, and (4) it was based on Plaintiff's self-reports.  Tr. 39.  Plaintiff argues that the ALJ failed to provide a specific and legitimate reason to reject the July 2012 opinion.  ECF No. 14 at 13.

The ALJ's first reason fails to meet the specific and legitimate standard.  The ALJ concluded that Plaintiff's ability to complete her household chores, attend church, and go grocery shopping was inconsistent with the conclusion that she was "unlikely to function adequately in a work setting."  Tr. 38.  The ALJ failed to state how these limited activities Plaintiff performed were inconsistent with psychological problems interfering with the ability to work.  The Ninth Circuit has expressed caution at finding activities of daily living inconsistent with the ability to

function in a work setting.  *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *See Smolen v. Chater*, 80 F.3d 1273,1287 n.7 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." (citation omitted)); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

      The ALJ's second reason for rejecting the July 2012 report, that it was inconsistent with clinical observations, is a specific and legitimate reason.  The ALJ may reject a medical opinion that is "brief, conclusory, and inadequately supported by clinical findings."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  The ALJ determined that the report was inconsistent with clinical observations such as Plaintiff's ability to interact cooperatively with medical personnel, being alert and oriented, and the ability to follow directions.  Tr. 38.  The ALJ determined that being cooperative with medical personnel, being alert and orientated, and being able to follow directions was inconsistent with the statement Plaintiff "is unlikely to function adequately in a work setting until her psychological symptoms have been managed more effectively."

      The ALJ's third reason for rejecting the July 2012 report was that it was inconsistent with Dr. Genthe's prior opinion, as well as the opinions for Dr. Haney and Dr. Mee.  Dr. Genthe's prior opinion was completed in December of 2009.  Tr. 382-387.  This was over two years prior to Plaintiff's amended date last insured, January 1, 2012.  Likewise, Dr. Mee's opinion was penned in January 2010.  Tr. 402-404.  Again this is two years prior to Plaintiff's amended date of onset.  *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited

relevance."). Not only do they predate the date of onset, limiting their relevance, they were also so long before the July 2012 report, it is unknown if the differences between the reports are true inconsistencies or just a worsening of Plaintiff's condition over time. Therefore the fact that the July 2012 report differs from these prior opinions is not a sufficient reason to meet the specific and legitimate standard. Unlike the opinions of Dr. Genthe and Dr. Mee, the opinion of Steven Haney, M.D., was penned in November 14, 2012. Tr. 109-111. Dr. Haney opined that Plaintiff was capable of one to three-step instructions and able to maintain concentration, precipitation, and pace in two-hour blocks with normal breaks. Tr. 109-110. She may have episodic difficulty completing work week due to depressive symptoms, but this was not a significant limitation. Tr. 110. She would need initial support in adaptation areas, but this was not a significant limitation. *Id*. Dr. Haney's opinion is inconsistent with the July 2012 statement that Plaintiff "is unlikely to function adequately in a work setting until her psychological symptoms have been managed more effectively." Therefore, this meets the specific and legitimate standard.

The ALJ's fourth reason for rejecting the July 2012 report, that it was based on Plaintiff's self-reports, is not a specific and legitimate reason. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ must provide the basis for his conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Here, the ALJ failed to discuss his basis for the conclusion that the opinion was based on Plaintiff's self-reports. Therefore, this reason fails to meet the specific and legitimate standard.

Here, the ALJ erred in his treatment of the July 2012 opinion adopted by Dr. Genthe by giving several reasons that did not meet the specific and legitimate standard. However, these errors were harmless, because the ALJ provided two

reasons that met the specific and legitimate standard. *See Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

### 2. Charles Wolfe, M.D.

On December 23, 2009, Dr. Wolfe reviewed the medical records associated with Plaintiff's file and opined that Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand/walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, push/pull with the upper extremities occasionally at a light level due to bilateral wrist condition with reduced grip and range of motion, balance occasionally, and work with occasional fine manipulation at the medium level. Tr. 375-378. He opined that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, and hazards. Tr. 378.

The ALJ gave Dr. Wolfe's opinion "some weight" because (1) it was inconsistent with some of the clinical observations by Dr. Opara, (2) it was inconsistent with Plaintiff's activities, and (3) the manipulation limitation was not supported by the opinion of Dr. Bernardez-Fu or Mr. Huerta. Tr. 35.

The ALJ's first reason, that it was inconsistent with the clinical observations by Dr. Opara, meets the specific and legitimate standard. The ALJ determined that Dr. Opara's observations that Plaintiff had no manipulative deficiencies and had intact upper extremity strength was inconsistent with Dr. Wolfe's findings. Tr. 35. Dr. Opara found that "[t]here were no manipulative activity limitations" and that Plaintiff's upper body strength was 5/5 in his functional assessment. Tr. 372-373. Therefore, the ALJ's first reason for rejecting Dr. Wolfe's opinion is sufficient.

The ALJ's second reason, that the opinion was inconsistent with Plaintiff's activities, is not legally sufficient. Again, the Ninth Circuit has expressed caution at finding activities of daily living inconsistent with the ability to function in a work setting. *Garrison*, 759 F.3d at 1016. Here, the ALJ failed to explain how Plaintiff's ability to complete household chores, use the computer, care for her

children, and prepare meals was inconsistent with Dr. Wolfe's opinion.  Tr. 35.  However any error resulting from this second reason is harmless error because the ALJ provided other legally sufficient reasons for rejecting Dr. Wolfe's opinion.  *See Tommasetti*, 533 F.3d at 1038.

The ALJ's third reason, that Dr. Wolfe's manipulative limitations are not supported by the opinion of Dr. Bernardez-Fu or physician assistant Mr. Huerta, meets the specific and legitimate standard.  Dr. Bernardez-Fu reviewed Plaintiff's file and opined that there were no manipulative limitations.  Tr. 109.  Mr. Huerta's opinion did not find any manipulative limitations; in fact, Mr. Huerta left the boxes next to handling, pulling, pushing, and reaching unchecked.  Tr. 412.  Therefore, Plaintiff's third reason for rejecting Dr. Wolfe's opinion is legally sufficient.  The ALJ did not error in his treatment of Dr. Wolfe's opinion.

### 3. Javier Huerta, PA

On January 14, 2010, Mr. Huerta limited Plaintiff to light work and opined that Plaintiff had restricted mobility with bending, climbing, crouching, and kneeling.  Tr. 412.  The ALJ gave Mr. Huerta's opinion "significant weight."  Tr. 35.  Later on August 10, 2010, in the "subjective" section of a treatment report, Mr. Huerta stated "[b]ecause of her medical conditions is disabled."  Tr. 550.

Plaintiff argues that the ALJ erred when he failed to discuss the August 10, 2010, statement by Mr. Huerta.  Plaintiff asserts this statement was a medical source opinion.  ECF No. 14 at 14.  However, it was made as part of the "subjective" section of the report and is juxtaposed next to the statement that Plaintiff "does not smoke, does not drink, does not use illegal drugs."  Tr. 550.  Considering the conclusory nature of the statement and its relative location in the report, it may be reasonably regarded as background information provided by Plaintiff, and not a residual functional capacity statement by the provider.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the ALJ is not required to discuss evidence that "is neither significant nor probative").

Therefore, the ALJ's failure to discuss the August 10, 2010, statement is not an error.

**B.    Fairly and Fully Develop the Record**

Plaintiff argues that the ALJ failed to fairly and fully develop the record by not sending Plaintiff for a consultative examination that included IQ testing. ECF No. 14 at 14-15.

The ALJ has "a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Smolen*, 80 F.3d at 1288. This duty exists even when the claimant is represented by counsel. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Despite this duty to develop the record, it remains the claimant's burden to prove that she is disabled. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a). "An ALJ's duty to develop the record . . . is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). "One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination." *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

Of the psychological evaluations in the file, the August 8, 2008, April 29, 2009, June 10, 2009, and July 20, 2012, evaluations do not speak to a limited intellect or impaired cognition. Tr. 312-318, 518. In his December 30, 2009, evaluation, Dr. Genthe stated that "[c]onsistent with persons who have undergone a complete hysterectomy, some cognitive decline could be considered. Although her mental status is reflective of impaired cognition, it should be noted that [Plaintiff] has only a 6th grade education, which she attained in Mexico." Tr. 386. The July 6, 2012 report by Ms. Sjostrom included a rule out diagnosis of borderline intellectual functioning. Tr. 473. This report was adopted by Dr. Genthe. Tr. 474. On May 9, 2013, Plaintiff, through her attorney, requested that the ALJ order a consultative examination with IQ testing. Tr. 302.

Plaintiff argues that the Dr. Genthe's and Ms. Sjostrom's reports indicating she may have impaired cognition triggers the ALJ's duty to develop the record by ordering a consultative examination. ECF No. 14 at 14-15. While these two reports support the need for additional testing, the other five evaluations in the record do not. If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Therefore, the Court will not disturb the ALJ's decision not to grant Plaintiff's request for a consultative examination. The ALJ did not error when he made his determination without additional IQ testing.

**C.     Step Four**

Plaintiff argues the ALJ erred in his step four determination by (1) failing to include all of Plaintiff's limitations in the residual functional capacity determination, (2) failing to identify the specific demands of Plaintiff's past relevant work, and (3) failing to properly compare the specific demands of Plaintiff's past relevant work with her functional limitations. ECF No. 14 at 16-17.

At Step Four, the claimant has the burden of showing that she can no longer perform her past relevant work. *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). "To determine whether a claimant has the residual capacity to perform [her] past relevant work, the [ALJ] must ascertain the demands of the claimant's former work and then compare the demands with [her] present capacity." *Villa v. Heckler*, 797 F.2d 794, 797-798 (9th Cir. 1986); *Marcia v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990). Social Security Ruling 82-62 summarizes these requirements:

1. A finding of fact as to the individual's [residual functional capacity].
2. A finding of fact as to the physical and mental demands of the past job/occupation.
3. A finding of fact that the individual's [residual functional capacity] would permit a return to his or her past job or occupation.

First, Plaintiff alleges that the ALJ erred by not including limitations from Dr. Genthe and Dr. Wolfe's opinions in the residual functional capacity. ECF No. 14 at 16. However, as discussed above, the ALJ did not error in the weight given to these opinions. Therefore, the ALJ did not error in his finding of fact as to Plaintiff's residual functional capacity determination.

Second, Plaintiff alleges that the ALJ failed to identify the specific demands of Plaintiff's past work as an agricultural produce sorter. ECF No. 14 at 17. In his decision, the ALJ identified Plaintiff's past work as an agricultural produce sorter, referenced the Dictionary of Occupational Titles number 529.687-186, and stated that the work was performed at the light exertional level and at SVP 2. Tr. 39. By referencing the Dictionary of Occupational Titles number, the exertional level, and the SVP level for the past work, the ALJ met the required finding of facts.

Third, Plaintiff alleges that the ALJ failed to make the necessary findings of facts that Plaintiff's residual functional capacity would permit her to return to her past job because she failed to set forth the specific demands of Plaintiff's past work. ECF No. 14 at 17. As discussed above, the ALJ met the required finding of facts as to the specific demands of Plaintiff's past work. Therefore, the ALJ's conclusion that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that the claimant is able to perform it as generally performed," is without error. Tr. 39-40. The ALJ did not error in his step four determination.

**D.     Step Five**

Plaintiff argues that the ALJ's hypothetical question to the vocational expert was inadequate because it failed to account for Plaintiff's physical impairments, resulting in an inadequate step five determination. ECF No. 17 at 18. An ALJ is only required to present the vocational expert with those limitations the ALJ finds to be credible and supported by the evidence. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001). As discussed above, the ALJ's residual functional

capacity determination was not in error because the ALJ properly weighed the opinions from Dr. Genthe and Dr. Wolfe.  Therefore, the ALJ's hypothetical presented to the vocational expert, which matched the residual functional capacity assessment, Tr. 81-83, is free of error.  The ALJ did not error in his step five determination.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 21**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED June 2, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE